ELKHART COUNTY DEPARTMENT OF PUBLIC WELFARE *v.* KEHR, ADMINISTRATOR OF ESTATE OF JOHN F. KEHR, DECEASED.

[No. 18,387. Filed May 19, 1953. Rehearing denied June 16, 1953. Transfer denied February 24, 1954.]

DISSENTING OPINION

EMMERT, J.—This appeal involves the adjudged priority of the widow's preferred claim for $1,000 (§6-711, Burns' 1933 (Supp.) ) over an old-age assistance lien (§52-1214, Burns' 1951 Replacement) held by appellant. The facts were stipulated, appellant's motion for new trial, which questioned the sufficiency of the evidence, was overruled, and this ruling is assigned as error on appeal.

George Kehr died intestate, a resident of Elkhart County, on March 1, 1951, leaving surviving him his

widow, Dora Kehr, three sons and two daughters. On April 3, 1947, appellee's decedent executed a written agreement to appellant and to the State of Indiana, that they should be reimbursed for all assistance paid him, or on his behalf, on and after May 1, 1947, and that said reimbursement be made from any property then owned or subsequently acquired by him, as provided by the Welfare Act of 1936, as amended, and the law of Indiana relating thereto. The wife never joined in the execution of this agreement. Notice of this lien was duly recorded May 1, 1947.

The estate was insolvent, and real estate of decedent was ordered sold to make assets for the payment of debts and claims. The real estate sold for $1,900.00 cash. Appellant's claim for old-age assistance advanced to decedent was $2,589.10, which was found and adjudged to be junior in priority to the widow's $1,000 preferred claim.

The interest which a widow takes in the estate of her deceased husband has always been a legislative matter in this state. Ordinance of 1787, 1843 R. S., p. 20;[1] Gavit, Indiana Law of Future Interests Descent and Wills, p. 11, §13. "In these states [Indiana, Missouri and New York] dower has always been treated as the creature of the statute—abridged or enlarged at pleasure." Noel v. Ewing (1857), 9 Ind. 37, 45.

Since the rights of the widow in the estate of her husband as against creditors are purely statutory, it is well settled that she must bring herself within the

1. ". . . saving, in all cases, to the widow of the intestate, her third part of the real estate for life, and one-third part of the personal estate; and this law relative to descent and dower, shall remain in full force until altered by the legislature of the district." Ord. 1787.
"A wife upon the death of her husband became entitled to a life estate in one-third of all the real estate of which her husband was seized in fee in his lifetime. It was not necessary that any issue be born of the marriage. The wife's life estate was called dower." Kales, Estates Future Interests (2d Ed.), §20, p. 20.

statutory rights granted in order to obtain such benefits. *State ex rel. Wever* v. *Reeves* (1951), 229 Ind. 164, 170, 96 N. E. 2d 268; *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 96, 69 N. E. 669 and cases therein cited; *Touhey* v. *City of Decatur* (1911), 175 Ind. 98, 102, 93 N. E. 540; *Board of Commrs.* v. *Millikan* (1934), 207 Ind. 142, 190 N. E. 185.

"If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors . . ." Section 6-2313, Burns' 1933.[2] "A surviving wife is entitled, except as in section seventeen [§6-2313] excepted, to one-third of all the real estate of which her husband may have been seized in fee simple at any time during the marriage, and in the conveyance of which she may not have joined, in due form of law, and also of all lands in which her husband had an equitable interest at the time of his death: . . ." Section 6-2325, Burns' 1933. "A surviving wife and minor children shall, in all cases, be allowed to remain in the ordinary dwelling-house of the family and to occupy the same and the messuage thereunto appertaining and fields adjacent, if any, not exceeding forty [40] acres, free of rent, for one [1] year from the death of her husband." Section 6-704, Burns' 1933.[3] It is not necessary to discuss her rights to some of the personal property of the decedent, except her preferred claim created by the statute.

---

2. The proviso adds, "That where the real estate exceeds in value ten thousand dollars, the widow shall have one-fourth only, and where the real estate exceeds twenty thousand dollars, one-fifth only, as against creditors." Section 6-2313, Burns' 1933.

3. The widow's right to occupy the homestead does not depend upon the existence of children. *Hoover* v. *Agnew, Admr.* (1883), 91 Ind. 370, 372; see also *Weaver, Gdn.* v. *Low* (1867), 29 Ind. 57.

Under §45 of Chapter 45 of the Acts of 1881 (Spec. Sess.), the widow was given a preferred claim as against certain creditors as follows:

"The widow of the decedent, whether he die testate or intestate, may, at any time before the sale, select and take articles therein named at the appraisement, not exceeding, in the aggregate, five hundred dollars [$500]. Each article taken by her shall be so noted on the inventory opposite the article taken, or a separate inventory may be made of the articles so taken, and returned with the general inventory. She shall execute a receipt therefor to the executor or administrator, which shall be returned and filed with the inventory. If the widow fails or refuses to select and take all or any part of the articles in this section provided, she shall be entitled to the amount of the deficiency, in cash, out of the first moneys received by the executor or administrator in excess of the amount necessary to pay the expenses of administration and of the last sickness and funeral of the deceased: Provided, That if the estate be clearly solvent, she shall be entitled to such payment out of the first moneys received by such executor or administrator. If the personal estate of the decedent be insufficient to pay the amount that may be due the widow, in cash, as aforesaid, the deficit shall constitute a lien upon the real estate of the decedent liable to sale for the payment of debts, which lien may be enforced, upon the petition of the executor or administrator, in like manner as lands of the decedent are sold for the payment of debts, and shall be superior to the lien of judgments upon said real estate rendered against the decedent." Section 6-711, Burns' 1933.

It is in substance and in fact a debt of the estate, created by statute the same as taxes are a debt created by the Legislature. In *Indiana Dept. of State Rev.* v. *Alexander's Estate* (1953), 232 Ind. 661, 115 N. E. 2d 747, we held that the widow's preferred claim was not subject to inheritance tax.

Chapter 201 of the 1941 Acts struck out all the existing provisions of the Welfare Act at that time which gave the county department and the state a lien for old age assistance advanced, and in *County Department of Public Welfare* v. *Potthoff* (1942), 220 Ind. 574, 44 N. E. 2d 494, this court held existing liens were vacated also. But in 1947 the General Assembly, by Chapter 144 of the 1947 Acts, a lien was created in favor of the state and county departments for old age assistance, and by Section 7 thereof, "all laws or parts of laws in conflict with this act are hereby repealed."

Section 1 of the 1947 Act, §52-1207, Burns' 1951 Replacement, provided for the quadruplicate execution of a certificate of the award of old age assistance, one copy of which was required to be given to the recipient, and "one copy filed in the office of the county recorder." "From the date on which such certificate is filed in the office of the county recorder, it shall be and constitute due notice of a lien against the recipient and his estate for any amounts recoverable under this act, and shall give a specific lien in favor of the state and county departments against the real property of the recipient, which lien shall continue from the date of the filing of such notice, until such lien is satisfied, and *which lien shall take priority over any other lien subsequently acquired. . . .*

". . . no foreclosure shall be commenced against the homestead of the recipient while occupied by the recipient or his or her spouse, except in case of fraud. *Said departments may at any time, assert the lien against other claimants or lien holders in protection of the homestead or other real estate of the recipient.*" (Italics supplied.)

Section 2 of the 1947 Act, §52-1213, Burns' 1951 Replacement, provided for the execution, by the reci-

pient, of an agreement to reimburse the state and county for all assistance granted, and stated *"Said agreement shall create and constitute a lien upon the real property of the recipient and shall have priority over all liens subsequently acquired."* (Italics supplied.)

Section 3 of the 1947 Act, §52-1214, Burns' 1951 Replacement, required the county departments to file a claim against the estate of a recipient for all assistance paid to, or on behalf of such person, from and after May 1, 1947, the claim to be on behalf of the county and state departments. This section then stated, *"Any claim filed for recovery of aged assistance shall have priority in order of payment from the estate over all other claims, except prior recorded encumbrances, taxes, reasonable costs of administration, and funeral expenses in an amount not to exceed $125.00.* If the real estate of a deceased recipient is occupied by a surviving husband or wife the department of public welfare shall not assert its lien or claim during the lifetime of said surviving spouse unless other claimants or persons have opened an estate and are attempting to enforce their claims in which case the department shall file and assert such claim for recovery of old age assistance." (Italics supplied.)

The provisions of §52-1214, Burns' 1951 Replacement, that "Any claim filed for recovery of aged assistance shall have priority in order of payment from the estate over all other claims, except prior recorded encumbrances, taxes, reasonable costs of administration, and funeral expenses in an amount not to exceed $125.00," are clear, unambiguous, and definitely establishes the priority of the claim in the settlement of the estate. It is in irreconcilable conflict with §45 of Chapter 45 of the 1881 Acts (Spec. Sess.), §6-711, Burns' 1933, creating the widow's preferred claim for $500, and the assistance lien act, being latter in point of time, by

implication repealed the inconsistent provisions of the former. *DeHaven* v. *Muncipal City of South Bend* (1937), 212 Ind. 194, 198, 7 N. E. 2d 184; *Kramer* v. *Beebe* (1917), 186 Ind. 349, 115 N. E. 83; *Stiers* v. *Mundy* (1910), 174 Ind. 651, 92 N. E. 374; I Sutherland, Statutory Construction (Horack's Ed.) §2012.

Section 6-711, Burns' 1933, (§45, Ch. 45, Acts 1881 (Spec. Sess.)), was amended by Chapter 53 of the 1949 Acts, §6-711, Burns' 1933 (Supp.), but the only change was to substitute the words "one thousand dollars" for "five hundred dollars." "It is a rule of statutory construction that a later law which is merely the re-enactment of a former law does not have the effect of repealing an intermediate statute which has qualified or limited such former law; but such intermediate act will remain in force to limit or modify the re-enacted law to the same extent that it did the first. *Gaston* v. *Merriam* (1885), 33 Minn. 271, 283, 22 N. W. 614; *Powell* v. *King* (1899), 78 Minn. 83, 84, 80 N. W. 850; *Collins Coal Co.* v. *Hadley* (1906), 38 Ind. App. 637, 75 N. E. 832, 78 N. E. 353; 1 Lewis' Sutherland, Statutory Construction (2d ed.) §273." *Gaughan* v. *State* (1918), 187 Ind. 334, 337, 338, 118 N. E. 565. See also *Public Service Comm.* v. *City of Indianapolis* (1922), 193 Ind. 37, 49, 137 N. E. 705; *City of New Albany* v. *Lemon* (1925), 198 Ind. 127, 137, 138, 149 N. E. 350, 152 N. E. 723.[4] The priority of the claim is not changed in any respect. If the General Assembly had intended to make the old age assistance lien subordinate to the

---

4. "The re-enactment of a statute is a continuation of the law as it existed prior to the re-enactment in so far as the original provisions are repeated without change in the re-enactment. Consequently, an intermediate statute which has been superimposed upon the original enactment as a modification of its provisions is likewise not repealed by the re-enactment of the original statute, but is construed as being continued in force to modify the re-enacted statute in the same manner that it did the original enactment." I Sutherland, Statutory Construction (Horack's Ed.), §2036, p. 515.

widow's preferred claim, it could have done so by proper language in the amendment. Therefore the priority of the old age assistance lien was not changed, and it is still prior to the widow's preferred claim for $1,000.

Old age assistance is a pure gratuity provided out of moneys raised by public taxation, and is not given in recognition or consideration for any services rendered by the recipient. The evident purpose of the provisions for reimbursement to the county and state departments of public welfare was to prevent preserving an estate for relatives who could not or would not support the recipient. It was just as much within the legislative powers of the General Assembly to provide for a lien and fix its priority, as it always has been within its constitutional authority to provide for tax liens on the real estate of property owners. The legislature in language too clear to ignore provided the exact priority this lien should have, and it is not the function of this court by judicial legislation to subordinate this lien in favor of the widow's preferred claim for $1000. Under the facts in this appeal, the widow had the right of quarantine[5] [§6-704, Burns' 1933]. In addition to that, she clearly inherited an undivided one-third interest in the real estate, which is not at all affected by the old age assistance lien.

---

"A later law which is merely a re-enactment of a former law does not repeal an intermediate act which has qualified or limited the first one, but the intermediate act will be deemed to remain in force and to qualify or modify the new act in the same manner as it did the first." 50 Am. Jur., p. 558, §553.

"In so far as the later law is merely a reenactment of an earlier one, it will not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first." 59 C. J. 926, 927, §528. See also 82 C. J. S. 505, §295.

5. Apparently this right of quarantine was ignored, for decedent died March 1, 1951, and the deed to the real estate was approved and delivered November 16, 1951.

For these reasons I think the appeal should have been transferred, the judgment should be reversed, and the trial court ordered to amend its findings and enter judgment accordingly.

Draper, C. J., concurs in this opinion.

NOTE.—Reported in 117 N. E. 2d 645.